## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE LINDA MERRITT<br><br>*Debtor* | CHAPTER 13<br>CASE NO. 11-18134 |
| LINDA MERRITT<br><br>       *Appellant*<br><br>   v.<br><br>MIDATLANTIC FARM CREDIT, ACA.,<br>CHESHIRE LAND PRESERVATION<br>FUND, and JOHN DOE<br><br>      *Appellees* | CIVIL ACTIONS<br>NO. 15-01854<br>NO. 15-01855 |
| LINDA MERRITT<br><br>       *Appellant*<br><br>   v.<br><br>R&R CAPITAL LLC and FTP CAPITAL,<br>LLC.<br><br>      *Appellees* | |

PAPPERT, J.                                                    MARCH 10, 2016

### MEMORANDUM

In this appeal from the United States Bankruptcy Court for the Eastern District of

Pennsylvania, Appellant Linda Merritt ("Merritt") seeks another bite at the proverbial apple

which by this point she has already chewed down to its core. Over seven years ago, a judge

presiding over a portion of this dispute's long history stated: "[t]he factual background of this

1

dispute is somewhat predictable; the procedural background, however, is a veritable nightmare."[1] That was written in 2008; now, after litigating her disputes in jurisdictions that "seemingly span the eastern seaboard,"[2] Merritt continues to seek reprieve from the numerous decisions in her opponents' favor.

These cases concern a business relationship between Merritt and R&R Capital LLC ("R&R Capital") dating back to 2003. These two parties co-owned various entities that invested in commercial and residential real estate as well as thoroughbred horses. Merritt was appointed Managing Member of each of the entities. After a series of disputes over Merritt's operation of the businesses, R&R Capital sought to remove her as manager. The Delaware Court of Chancery ruled that R&R Capital had the right to do so under the terms of the parties' operating agreement, and subsequently extinguished all of Merritt's ownership interest in the businesses after she violated a number of the court's orders. As a consequence, R&R Capital emerged as the sole owner of the entities and a court-appointed receiver sold at least one of the entities' properties at a public auction to satisfy an outstanding mortgage. Cheshire Land Preservation Fund ("Cheshire"), a non-profit charitable trust whose mission is, in part, to promote and encourage the preservation of open space, purchased one of the properties from Heyman at the auction.

After filing for Chapter 13 bankruptcy, Merritt filed adversary complaints against R&R Capital (the "R&R Capital Action") and Cheshire (the "Cheshire Action") challenging the transfers of assets to those defendants and claiming, among other things, that they should be avoided as fraudulent conveyances pursuant to 11 U.S.C. § 548. The Bankruptcy Court granted

---

[1]     *R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*, No. 3803, 2008 WL 3846318, at \*1 (Del. Ch. Aug. 19, 2008).

[2]     *Id.* ("The courts the parties have turned to, however, seemingly span the eastern seaboard. In addition to the present case, there are related proceedings in the state court in Chester County, Pennsylvania, in the federal district court in the Eastern District of Pennsylvania in Philadelphia, and in the Civil Division of the New York County Supreme Court in New York.").

both R&R Capital and Cheshire's motions to dismiss Merritt's adversary complaints, finding that she lacked standing to bring her claims derivatively, failed to state a claim and that giving her leave to amend would be futile.

Before the Court are Merritt's appeals of those two decisions.[3]  She contends that Chapter 13 debtors can have standing to pursue avoidance claims and that the Bankruptcy Court erred in ruling that she does not have derivative standing.  She further argues that the Bankruptcy Court erred in ruling that she failed to state a claim upon which relief can be granted and that amending her complaints would be futile.  R&R Capital and Cheshire each argue that the Bankruptcy Court correctly dismissed Merritt's adversary complaints because she does not have standing to pursue these claims derivatively.  They further contend that, in any event, Merritt fails to state a Section 548 claim because she did not have an ownership interest in any of the assets in question, and allowing her leave to amend would be futile.  For the reasons discussed below, the Court affirms the Bankruptcy Court's decisions.

## I.

Between September 2003 and December 2004, Merritt and R&R Capital formed ten jointly-owned limited liability companies (collectively the "Entities"), including Merritt Land LLC ("Merritt Land").  (Cheshire Action, Joint Appendix to Record on Appeal, R-237.)[4]  The parties appointed Merritt as the Managing Member of the Entities, which invested in commercial and residential real estate and thoroughbred horses to race and breed.  (*Id.*)  In 2003, Merritt Land agreed to buy 90 acres of land located on Apple Grove Road in East and West Marlborough Townships, Chester County, Pennsylvania (the "Apple Grove Property") for $1.3 million.

---

[3]      The Court addresses Merritt's appeals from both the R&R Capital Action and the Cheshire Action together in this opinion as they both involve substantially the same legal issues and arise from the same series of events.

[4]      The pages in the Joint Appendix to the Record in the Cheshire Action are labeled with a prefix of "R-." For ease of reference, the Court maintains this numbering scheme when citing to the Record.

Merritt contributed $400,000 to Merritt Land to purchase the property and MidAtlantic provided the remaining capital through a $975,000 secured mortgage. (R-238.)

R&R Capital and Merritt's working relationship quickly deteriorated as a result of a number of disputes regarding the management of the Entities. (R-1237.) Between 2005 and 2008, R&R Capital initiated six separate lawsuits in four different jurisdictions against Merritt and/or the Entities seeking, among other things, to remove her as Manager. (R-239.)

### A.  The Pennsylvania Litigation

R&R Capital filed one such case before this Court on April 12, 2006 (the "Pennsylvania Litigation"). *See R&R Capital, LLC v. Merritt*, No. 06-1554, McLaughlin, J. (E.D. Pa. filed Apr. 12, 2006). In that litigation, R&R Capital sought rescission and replevin of a sale of horses from Merritt, alleging that she fraudulently induced it into agreeing to the transaction. (R-1239.) On April 20, 2009, following a bench trial before the Court, Judge McLaughlin issued an opinion and order finding in favor of R&R Capital on its rescission and replevin claims. (R-1239.) She held that Merritt fraudulently induced R&R Capital to purchase three horses and ordered Merritt to refund the purchase price. *See R & R Capital, LLC v. Merritt*, 632 F. Supp. 2d 462, 479–80 (E.D. Pa. 2009) *aff'd*, 426 F. App'x 85 (3d Cir. 2011).

### B.  The Delaware Litigation

As a result of Merritt's alleged fraud giving rise to the Pennsylvania Litigation, on August 20, 2008, R&R Capital sent Merritt notice of her removal as manager of the Entities for "Cause" pursuant to Section 4.5 of the Entities' operating agreements. (R-1238–39.) It then filed a lawsuit in the Delaware Court of Chancery seeking a "declaration that [Merritt] was validly removed as manager and member of the Entities." (R-1236.)

On September 3, 2009, the court issued a declaratory judgment stating that the "August 2008 removal notice was proper and effective. Accordingly, Merritt has been removed as

4

manager for cause." (R-1242.)  The court then appointed Kurt Heyman ("Heyman" or the "Receiver") as the Receiver for the Entities, giving him broad powers to liquidate and dissolve the Entities, including the "sole authority to act on behalf of the Receivership Entities and to take such actions as he deems appropriate on all issues involving [ ] liquidation and dissolution." (R-239, R-1312.)

On October 2, 2009, Heyman retained Barr Realty to evaluate and appraise the Entities' various properties, including the Apple Grove Property. (R-351.)  Given the poor state of the real estate market in 2009, Heyman was unable to sell the Apple Grove Property in a private sale. (R-1223.)  On April 20, 2010, Heyman held a public auction for the Apple Grove Property. (*Id.*) Cheshire submitted the highest bid at the auction of $1.1 million. (R-1219, R-1223.)  That bid, however, was insufficient to satisfy MidAtlantic's outstanding mortgage. (R-1223.)  Heyman ultimately negotiated a post-auction purchase of the property with Cheshire for $1.25 million, which exceeded MidAtlantic's outstanding mortgage by $40,000. (R-244.)

In the ongoing Delaware Litigation, the Court of Chancery ordered a freeze on the Entities' bank accounts after R&R Capital produced evidence that Merritt was continually withdrawing thousands of dollars of the Entities' funds for which she could not provide documentation. (R-1221; R-1271–1300.)  On June 21, 2010, Heyman filed a motion for contempt against Merritt, alleging that she engaged in acts to frustrate his ability to expeditiously and efficiently wind up the affairs of the Entities in violation of the Court of Chancery's previous orders. *See In re Merritt*, 529 B.R. 845, 850 (Bankr. E.D. Pa. 2015).  On June 28, 2010, as a result of Merritt's "fraud against the Entities, continued bad acts and repeated failure to abide by the Delaware Court of Chancery's Orders requiring [her] to cease her management" of the Entities, the Court of Chancery held her in contempt of several orders (the "Contempt Order").

(R-1302-06.)  The Contempt Order provides, among other things, that Merritt is "removed as a member of all the Receivership Entities, and shall not be entitled to any distribution of the Receivership Entities' assets at the conclusion of their dissolution and winding up."  (R-1304.)  It extinguished Merritt's equity and economic interests in Merritt Land as of June 28, 2010.  (R-1222.)

On February 21, 2011, the court dismissed Merritt's claims contesting the Contempt Order.  Merritt appealed that decision to the Delaware Supreme Court.  (R-1156.)  She argued that the Court of Chancery erred in: (1) granting summary judgment in R&R Capital's favor; and (2) abused its discretion in entering the Contempt Order and issuing sanctions against her.  *See Merritt v. R&R Capital, LLC*, No. 144-2011, 2011 WL 2835704, at *18–32 (Del. June 30, 2011).  On June 26, 2013, after briefing and oral argument, the Delaware Supreme Court affirmed the Court of Chancery's rulings.  (R-1309.)  On October 6, 2014, the United States Supreme Court denied Merritt's petition for writ of certiorari.  *See Merritt v. R & R Capital LLC*, 135 S. Ct. 47 (2014).

### C.  Merritt's Bankruptcy Filing and Adversary Complaint

On October 20, 2011, Merritt filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code.  (R-8.)  In early October 2013, Merritt sent the Chapter 13 Trustee, William Miller (the "Trustee" or "Miller"), two proposed adversary complaints seeking to: (1) avoid the transfer of the Apple Grove Property to Cheshire, (R-198–205); and (2) challenging Heyman's transfer to R&R Capital of over $5 million in assets for "less than equivalent value."  (R-138.)  After Miller refused to take any action, Merritt filed an adversary complaint against Cheshire in the Bankruptcy proceedings on October 21, 2013, seeking to avoid the Receiver's sale of the Apple Grove Property pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.  (R-235–54.)  On that same day, she also filed an adversary complaint against R&R Capital, alleging that the

6

transfers of assets to R&R Capital as a result of the Contempt Order were a fraudulent conveyance under Section 548.  (R&R Capital Action, Joint Appendix to Record on Appeal, R*245.)[5]

On December 3, 2013, Merritt filed a motion to compel the Trustee to substitute, join or ratify her complaints against Cheshire and R&R Capital, or abandon the claims and grant Merritt derivative standing to prosecute the actions.  (R-1–21.)  She claimed that Cheshire "obtained the Apple Grove Property from Heyman for $1.25 million" even though it "was worth at least $3.2 million," and that the Trustee "declined to substitute into the actions" after she requested him to do so.  (R-12–13.)  She also argued that as a result of the Contempt Order, R&R Capital received $5 million in assets and $10 million in voided claims against the Entities even though the Entities "may have incurred, at most, $150,000 in damages."  (R-11.)  On December 17, 2013, the Bankruptcy Court held an emergency hearing on the motion to compel and entered an order denying it the same day.  (R-186–231.)

Cheshire then moved to dismiss Merritt's claim against it pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (R-1218–34.)  Cheshire argued that Merritt does not have standing to prosecute an avoidance action, does not have an interest in the Apple Grove property, and cannot establish that the Receiver failed to transfer the property for reasonably equivalent value.  (R-1219.)  Similarly, R&R Capital moved to dismiss Merritt's claims against it, contesting that Merritt does not have standing to bring a Section 548 claim and that the Court lacks subject matter jurisdiction.  (R*289, 293.)  On May 12, 2014, Merritt moved for leave to amend the Complaint pursuant to Federal Rule 15(a)(2).  (R*371–72.)

---

[5]      The pages in the Joint Appendix to the Record in the R&R Capital Action are also labeled with a prefix of "R-."  For ease of reference and to distinguish between references to the appendix in the Cheshire and R&R Capital Actions, the Court will use a designation of "R*" when citing to the record in the R&R Capital Action.

On March 25, 2015, the Bankruptcy Court issued an opinion (the "Cheshire Bankruptcy Opinion") and order (the "Cheshire Bankruptcy Order") granting Cheshire's motion to dismiss and denying Merritt's motion for leave to amend. *See In re Merritt*, 529 B.R. at 845. As discussed in greater detail *infra*, the Bankruptcy Court held that Merritt did not have derivative standing to pursue a Section 548 claim and, in any event, failed to state a claim because she personally did not own an interest in the Apple Grove Property when it was transferred. *In re Merritt*, 529 B.R. at 859–65. Accordingly, the Bankruptcy Court dismissed her claim and held that amending the complaint would be futile. *Id.* The following day, the Bankruptcy Court issued an order granting R&R Capital's motion to dismiss and denying Merritt's motion to file an amended complaint (the "R&R Capital Bankruptcy Order"). The court referred to its reasoning in the Cheshire Bankruptcy Opinion. (R*730–46.) On April 7, 2015, Merritt filed Notices of Appeal of the Cheshire Bankruptcy Order and the R&R Capital Bankruptcy Order. (R-1041–44.)

## II.

This Court has jurisdiction over Merritt's appeals under 28 U.S.C. §§ 158(a)(1) and 1334. As a general matter, a district court reviews a bankruptcy court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse. *In re Martin's Aquarium, Inc.*, 98 F. App'x 911, 913 (3d Cir. 2004). Specifically, questions on appeal as to whether a bankruptcy court had subject matter jurisdiction to hear a particular claim or a party had standing to bring the claim are reviewed de novo. *See In re RFE Industries, Inc.*, 283 F.3d 159, 163 (3d Cir. 2002). Whether a party sufficiently states a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law and therefore also reviewed de novo. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *See also Easley v. New Century Mortgage Corp.*,

394 F. App'x 946, 947 (3d Cir. 2010).  In both the standing and failure to state a claim analyses,

our approach is the same: "we accept as true [Merritt's] material allegations, and construe the

complaint in the light most favorable to [her]."  *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753,

758 (3d Cir. 2009).

### III.

Merritt argues that the Bankruptcy Court erred in denying her derivative standing to

pursue avoidance claims against both Cheshire and R&R Capital.  (Appellant's Brief, Cheshire

Action at 13; Appellant's Brief, R&R Capital Action at 23.)  The Court disagrees.  The

Bankruptcy Court was correct.  In *Weyandt v. Federal Home Loan Mortgage Corporation (In re

Weyandt)*, 544 F. App'x 107 (3d Cir. 2013), the Third Circuit Court of Appeals addressed a

similar argument from a Chapter 13 debtor seeking derivative standing.  In that case, debtor

Michelle Weyandt ("Weyandt") filed for Chapter 13 bankruptcy protection after she defaulted on

her mortgage and her home was sold at a sheriff's sale.  *Id.* at 108–09.  She then filed an action

purporting to exercise the bankruptcy trustee's avoidance powers to overturn the sheriff's sale as

a preference or fraudulent transfer.  *Id.* at 109.  The Bankruptcy Court ruled that Weyandt lacked

standing and the United States District Court for the Western District of Pennsylvania and the

Third Circuit both affirmed.  *Id.*

On appeal, Weyandt did not contest that she lacked direct standing and only argued that

the district court and bankruptcy court erred in finding that she lacked derivative standing.[6]  *Id.*

She contended that the Third Circuit's ruling in *Official Committee of Unsecured Creditors of

Cybergenics Corporation v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (en banc), which allowed a

Chapter 11 debtor to maintain derivative standing, should be extended to the Chapter 13 context.

---

[6]     Merritt conceded at oral argument that she does not have direct standing: "*Q:* So you're conceding there
was no direct standing, obviously?  *A:* That's correct.  That's the law, and there's no dispute about that.  So – and
that's common in both cases here."  (Oral Arg. at 7:5–9.)

*Id.*  In *Cybergenics*, the Third Circuit held that "when a trustee fails to comply with his or her fiduciary duties, the bankruptcy court is empowered under the Bankruptcy Code to use its equitable powers to confer derivative standing on another party."  *In re Weyandt*, 544 F. App'x at 110 (citing *Cybergenics*, 330 F.3d at 572).  Against that backdrop, the Third Circuit noted that Weyandt "face[d] two hurdles in her attempt to assert derivative standing":  (1) explaining why the derivative standing allowed in the Chapter 11 context in *Cybergenics* should be extended to the Chapter 13 context; and (2) demonstrating that derivative standing in her case was appropriate because "the Trustee failed to carry out her Trustee duties in declining to initiate an avoidance action directly."  *Id.* (citing *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1442 (6th Cir. 1995) (observing that in the Chapter 11 context "perhaps the most important prerequisite to derivative standing is that [the Trustee] has abused its discretion in failing to avoid a preferential or fraudulent transfer")).  The Third Circuit held that Weyandt failed to clear these two hurdles: she did not provide an "in-depth examination of the form and purpose of Chapter 13 bankruptcies" to allow the court to extend the *Cybergenics* holding to the Chapter 13 context; and even if she did, she failed to demonstrate "that a grant of derivative standing would be appropriate under the facts and circumstances of this case."  *Id.*

Here, the Bankruptcy Court correctly applied the Third Circuit's analysis from *In re Weygandt* to Merritt's claim, ruling that the Trustee did not violate any fiduciary duty in declining to pursue the avoidance actions.  *In re Merritt*, 529 B.R. at 861.  It thoroughly reviewed the Trustee's testimony at the hearing on Merritt's motion to compel, examining his reasons for refusing to bring the avoidance claims.  Specifically, it noted that: (1) Merritt did not request that he file the adversary complaints until shortly before the expiration of the two-year statute of limitations, and he had insufficient time to conduct a reasonable investigation into the

long background of the various litigations and sign the complaints in compliance with Rule
9011[7]; (2) he knew that Cheshire and R&R Capital had, at the very least, a colorable defense in
rebutting Merritt's claims; (3) Merritt Land—not Merritt herself—owned the Apple Grove
Property; (4) the Contempt Order extinguished any right Merritt had to the proceeds from the
sale of any of the Entities' properties, including the Apple Grove Property; and (5) Heyman
auctioned the Apple Grove Property "under the auspices of the Chancery Court" for "reasonably
equivalent value."  *Id.* at 862.

As the Bankruptcy Court correctly noted, the "Trustee's reasons for refusing to bring the
avoidance claims in his name are sound."  *Id.*  Merritt did not send the Trustee the draft
adversary complaints until October 4, 2013—nearly two years after she filed for bankruptcy and
less than three weeks before the statute of limitations was set to expire.  (R-138.)  Without any
explanation for her delay, Merritt imposed upon the Trustee the undertaking of combing through
a series of lawsuits in jurisdictions that "seemingly span the eastern seaboard."  (R-1247.)  In this
appeal, Merritt now seeks a judicial determination that the Trustee abused his discretion in
refusing to agree to pursue these claims and representing to the Bankruptcy Court, under penalty
of sanctions, that each of the claims was nonfrivolous and were likely to have evidentiary
support.  Fed. R. Bankr. P. 9011.

Under these circumstances, the Trustee acted within his discretion in declining to pursue
the claims.  Even after a cursory review of the various disputes between Merritt and R&R
Capital, the Trustee reasonably concluded, in light of Judge McLaughlin's ruling that Merritt
acted fraudulently in her dealings with R&R Capital and the Delaware Court of Chancery's

---

[7]     Federal Rule of Bankruptcy Procedure 9011 states that when an attorney signs a pleading, he certifies that,
among other things: it is not being brought for any improper purpose; the claims are warranted and nonfrivolous;
and the allegations have evidentiary support or are likely to have evidentiary support after further investigation.  It
further provides that an attorney may be subject to sanctions for any violation of the Rule.

Contempt Order, that the adversary complaints would be legitimately rebutted.  (R-201–02.)
Further, the Trustee correctly believed that Heyman's auction of the Apple Grove Property—in
which he managed to negotiate an increase in the post-closing price to cover the outstanding
mortgage and save Merritt from defending a deficiency action—satisfies the "reasonably
equivalent value" language in Section 548.[8]  (R-205.)  *See BFP v. Resolution Trust Corp.*, 511
U.S. 531, 546 (1994) ("We deem, as the law has always deemed, that a fair and proper price, or a
'reasonably equivalent value,' for foreclosed property, is the price in fact received at the
foreclosure sale, so long as all the requirements of the State's foreclosure law have been
complied with.").

        The analysis of whether the Trustee breached a fiduciary duty—and thus whether Merritt
has derivative standing—presupposes that the reasoning in *Cybergenics* extends to the Chapter
13 context.  As the Third Circuit has recognized, that "is an unsettled [issue]."  *In re Weyandt*,
544 F. App'x at 110.  Contrary to Merritt's claims,[9] the Third Circuit has yet to decide that a
Chapter 13 debtor has derivative standing to pursue a Section 548 avoidance action.  *See id.* ("At
this time we do not take a position on whether derivative standing may be appropriate in some

---

[8]        As discussed in greater detail in Section IV, one of the elements necessary to sustain a Section 548 claim is
a showing that the "debtor received less than a reasonably equivalent value in exchange for [the] transfer."  *See, e.g.*,
*In re Universal Mktg., Inc.*, 541 B.R. 259, 296 (Bankr. E.D. Pa. 2015).

[9]        Merritt incorrectly cites *Walia v. Singh*, No. 07-5541, 2008 WL 2676617 (D.N.J. July 1, 2008) and
*McKenna v. Healthease, Inc.*, No. 10-3940, 2013 WL 159379 (E.D. Pa. Jan. 15, 2013) for the proposition that
"[w]here a Chapter 13 debtor has a colorable *Section 548* avoidance claim, but the trustee unjustifiably declines to
pursue the claim, the debtor does have recourse."  (Appellant's Brief, Cheshire Action at 21.)  Neither of those cases
stand for that proposition.  In *Walia*, the district court held that the bankruptcy court in a Chapter 7 proceeding did
not abuse its discretion in substituting a trustee as plaintiff and tolling the statute of limitations to allow him to
evaluate the merits of an avoidance claim under 11 U.S.C. § 544.  2008 WL 2676617, at *7.  In *McKenna*, the
district court affirmed the bankruptcy court's finding that the debtor lacked standing to bring employment
discrimination claims in her own name and failed to seek substitution of the Chapter 7 trustee as the true party in
interest.  2013 WL 159379, at *3.  Merritt also cites *In re Stewart*, 473 B.R. 612, 636–37 (Bankr. W.D. Pa. 2012),
decided prior to *Weyandt*, where the bankruptcy court stated that it "sees no reason why [*Cybergenics*] should not
apply equally as well to debtors in the chapter 13 context."  It then held that the debtors could not obtain standing to
pursue that particular action because they did not allege facts giving rise to a "colorable claim."  *Id.* at 637.  Though
these cases leave open the possibility that a debtor may have derivative standing to pursue a Section 548 claim in a
Chapter 13 proceeding, they are far from unequivocal and leave the issue "unsettled."  *In re Weyandt*, 544 F. App'x
at 110.

Chapter 13 contexts, an issue that Weyandt acknowledges in her brief is an unsettled one."). Merritt has not advanced an "examination of the form and purpose" of Chapter 13 bankruptcies sufficient to allow the Court to conclude that the Third Circuit's decision in *Cybergenics* should be extended to the Chapter 13 context.  This is not to say that derivative standing can never be sustained in a Chapter 13 bankruptcy, but that, consistent with the Third Circuit's reasoning in *In re Weyandt*, it cannot be done in this case.  Regardless, the Court need not resolve this issue since Merritt cannot clear the other necessary hurdle—that the Trustee breached a fiduciary duty in refusing to pursue these claims.

## IV.

Merritt also argues that the Bankruptcy Court erred in ruling that she has failed to state a Section 548 avoidance claim.  (Appellant's Brief, Cheshire Action at 34; Appellant's Brief, R&R Capital Action at 35.)  Section 548 sets forth the powers of a trustee to avoid fraudulent transfers. *See BFP*, 511 U.S. at 535.  To avoid a transfer under Section 548(a)(2), the trustee must establish that: (1) the debtor had an interest in the property; (2) the interest was transferred within two years of the filing of the bankruptcy petition; (3) the debtor received less than a reasonably equivalent value in exchange for such transfer; and (4) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof.  *See, e.g.*, *In re Universal Mktg., Inc.*, 541 B.R. 259, 296 (Bankr. E.D. Pa. 2015) (internal citation omitted).  Merritt's adversary complaints allege Section 548 avoidance claims against both Cheshire and R&R Capital: she contends that "Heyman's transfer of Merritt Land's Apple Grove property with a value of at least $2,7000,000 for $1,250,000 to Cheshire . . . constitutes a fraudulent conveyance," (R-252); and that "transfers for no consideration to R&R [Capital] of assets worth in excess of $7 million dollars [sic], and half of which rightfully belonged to Debtor, [were] a fraudulent conveyance."  (R*245.)

13

There is no dispute that Merritt Land—not Merritt herself—owned Apple Grove Property at the time of the auction.  (R-254.)  Accordingly, the Bankruptcy Court held that "[b]ecause Debtor has not alleged that she had an interest in the Apple Grove Property when it was transferred to Cheshire, her Complaint fails to state a claim upon which relief can be granted." *In re Merritt*, 529 B.R. at 864.  Similarly, the Bankruptcy Court relied on the same reasoning in dismissing her avoidance claim against R&R Capital:  "[t]he linchpin of the Court's dismissal of [Merritt's Section 548 claim] is its reasoning that [she] did not have an interest in the property/assets owned by the Entities."[10]  (Appellant's Brief, R&R Capital Action at 20.)  Merritt contends, however, that the Bankruptcy Court erred because the Entities' Operating Agreements "not only contemplated that a Member can have a direct interest in its property but also provided that upon liquidation . . . that the Member is entitled to receive property of the Entity to satisfy the Members [sic] interest and capital account."[11]  (Appellant's Brief, Cheshire Action at 33; Appellant's Brief, R&R Capital Action at 20.)

Merritt's argument is unavailing.  Under Delaware law, "[a] limited liability company interest is personal property.  A member has no interest in specific limited liability company property."  6 Del. C. § 18-701.  Even assuming that the parties may contract around this statutory language, nothing in the Entity Operating Agreement purports to do so.  Cheshire and R&R Capital rightly assert that the provisions to which Merritt cites in her brief—Sections 8.3 and 11.3—do not stand for such a proposition.  Section 8.3, titled "Allocations, Distributions, and Accounting Method," addresses how to value any "property other than cash" if it is distributed to

---

[10]     In dismissing Merritt's Section 548 claim against R&R Capital, the Bankruptcy Court referred to its reasoning in the Cheshire Bankruptcy Opinion.  (R*744.)

[11]     Merritt appears to have waived this argument as this is the first time she has raised it.  *See The Majestic Star Casino LLC v. Barden Development, Inc. (In re The Majestic Star Casino, LLC)*, 716 F.3d 736, 746 (3d Cir. 2013) (internal citation omitted) (stating that "arguments not raised below are normally waived on appeal").  The Court addresses this claim as it fails on the merits in any event.

any Member.  (R-387)  Section 11.3, titled "Liquidation: [ ] Priority Payment," addresses the priority of asset distribution in the event of a liquidation.  (R-391.)  Neither of these provisions purports to override Section 18-701 of the Delaware Code and transform Merritt's membership interests in the Entities into ownership interests in the underlying properties.  Rather, they address the proper distribution of assets under various circumstances.  Without an interest in the transferred properties, Merritt cannot maintain Section 548 claims against either Cheshire or R&R Capital.

## V.

The Court reviews the Bankruptcy Court's denial of Merritt's motion for leave to amend for abuse of discretion.  *See Martino v. Everhome Mortgage*, 411 F. App'x 508, 510 (3d Cir. 2010).  The Bankruptcy Court abuses its discretion if an erroneous view of the law undermines its determination that amendment is futile.  *Id.* (internal citation omitted).

Merritt's proposed Amended Complaint seeks to add derivative claims against R&R Capital and Cheshire.  (R*394, R-366.)  The Bankruptcy Court held that granting Merritt leave to amend is futile because, as a result of the Contempt Order, she no longer had an ownership interest in any of the Entities and therefore cannot satisfy Delaware's derivative standing requirement that a plaintiff maintain continuous and contemporaneous ownership.  *In re Merritt*, 529 B.R. at 864–65.  The Bankruptcy Court also rebutted Merritt's argument that the Contempt Order was itself an avoidable transfer, and thus she satisfies Delaware's derivative standing requirements.  *Id* at 865.  It held that she has not alleged in her Amended Complaint that the Contempt Order is an avoidable transfer or sought to avoid it pursuant to Section 548.  *Id.* Further, the Bankruptcy Court held that Merritt cannot sustain a derivative action in any event

for the reasons it previously discussed—*i.e.*, she cannot demonstrate that the Trustee breached a fiduciary duty. *Id.*

Under 6 Del. C. § 18-1002, a plaintiff in a derivative action must be a member of a limited liability company at the time she brings the action *and* at the time of the transaction of which she complains.  The Supreme Court of Delaware has stated that the "plain language of 6 Del. C. § 18-1002 is unambiguous and limits derivative standing in LLCs exclusively to 'member[s]' or 'assignee[s].'"  *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011), *as corrected* (Sept. 6, 2011).  "[I]n the LLC context, the 'Proper Plaintiff' *must* be a member or an assignee of a limited liability company interest[.]  That is the only reasonable interpretation of the plain language of section 18-1002."  *Id.* at 1042 (internal quotation marks omitted).  Since the Contempt Order extinguished Merritt's ownership interest in the Entities, she is not a contemporaneous owner and therefore cannot satisfy Delaware's derivative standing requirements.

Merritt acknowledges that she "is not and cannot challenge the Contempt Order." (Appellant's Brief, R&R Capital Action at 35; Appellant's Brief, Cheshire Action at 34.)  She argues, however, that she seeks to amend her complaint "to establish a method by which [she] could assert a recoverable interest in the $7 million of Entity assets transferred to R&R – reinstatement of her 50% interest in the Entities that owned the $7 million in assets." (Appellant's Brief, R&R Capital Action at 35.)  Similarly, she contends that the "purpose of the First Amended Adversary Complaint [against Cheshire] was to establish a method by which [she] could assert a recoverable interest in the property – reinstatement of her 50% interest in the Entity that owned the Property, Merritt Land."  (Appellant's Brief, Cheshire Action at 35.) Merritt's argument is unpersuasive since seeking reinstatement of her interest in the Entities is

another way of saying that she is seeking reversal of the Contempt Order, which she concedes she cannot do.  Further, none of the claims in the Amended Complaints against Cheshire and R&R Capital purport to grant Merritt reinstatement of her 50-percent interest in the Entities. Thus, her proposed amendment does not and cannot cure her lack of derivative standing.

The decisions of the Bankruptcy Court are affirmed in all respects.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.